**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
LARRY ARROYO, individually and on behalf of
all others similarly situated,

                         Plaintiff,

         -against-

J & M REALTY SERVICES CORP., 219 E. 27TH
ST. CORP., 68 PERRY STREET LLC, BRA REAL
ESTATE INC., and JERRY EDELMAN, DAVID
EDELMAN, and JESSICA EDELMAN, in their
individual capacities,

                        Defendants.
------------------------------------------------------------X

Case No.

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiff Larry Arroyo ("Arroyo" or "Plaintiff"), by his attorneys, Akin Law Group, PLLC,

alleges on behalf of himself and all others similarly situated against Defendants J & M Realty

Services Corp. ("J & M"), 219 E. 27TH St. Corp. ("219 E. 27th"), 68 Perry Street LLC ("68 Perry"),

and Bra Real Estate Inc. ("Bra") (collectively, "Corporate Defendants"), as well as Jerry Edelman

("Jerry"), David Edelman ("David"), and Jessica Edelman ("Jessica") (collectively, "Individual

Defendants") (Corporate Defendants and Individual Defendants collectively, "Defendants"), upon

information and belief, as follows:

## NATURE OF THE CLAIMS

1. Defendant J & M operates as a property management company, providing property

   management services for residential, multi-unit apartment buildings throughout the New

   York City metropolitan area, including for the other named Corporate Defendants.

2. In conjunction with the building operators, J & M employs individuals responsible for the

   upkeep and operation of the managed properties, including residential janitors, also known

as "superintendents" or "supers", repair persons, cleaning staff, and employees providing other janitorial services, to provide on-site property management.

3. From in or around February 2009 until his constructive termination on or around February 2, 2021, Plaintiff Arroyo was jointly employed by Defendant J & M and Defendant 68 Perry as a janitor/super.

4. From in or around November 2014 until in or around November 2020, Plaintiff Arroyo was additionally jointly employed by Defendant Bra as a janitor/super.

5. From in or around February 2016 until on or around February 2, 2021, Plaintiff Arroyo was additionally jointly employed by Defendant 219 E. 27th as a janitor/super.

6. In his capacity as a janitor/super, Plaintiff performed varied manual tasks necessary to maintain the upkeep and operation of the properties managed by J & M and owned, operated, and/or controlled by the other Corporate Defendants. The tasks performed by Plaintiff during his employment with Defendants included, but were not limited to: cleaning apartments, installing appliances and sheet rock, and repairing plumbing, electrical, and heating and cooling systems. Plaintiff was also required to purchase all materials necessary to perform his job duties, to the extent Defendants did not provide Plaintiff with the required materials.

7. Defendants maintained a pattern and practice of failing to pay Plaintiff and other similarly situated, non-exempt employees, including supers, repair persons, cleaning staff, and employees providing other janitorial services, the minimum wage for all hours worked, the overtime rate of one-and-one half (1 ½) times the regular hourly/applicable minimum wage rate for all hours worked in excess of 40 hours per week, and spread-of-hours pay for each workday their shift or shifts exceeded 10 hours per day.

8. Defendants regularly paid Plaintiff and other similarly situated employees a flat salary by check either twice monthly or monthly, apportioned among the entities for whom the employees performed, for all hours worked, including hours over 40. This payroll scheme is an obvious and willful avoidance of Defendants' obligation to pay minimum and overtime wages, as required under state and federal law.

9. Further, Defendants regularly failed to reimburse Plaintiff and other similarly situated employees for expenses incurred during their employment with Defendants in the course of performing their usual duties and responsibilities and in furtherance of Defendants' business interests.

10. Defendants also failed to furnish to Plaintiff and other similarly situated employees annual wage notices and pay statements completely and accurately reflecting, *inter alia*, hours worked, pay received, and taxes withheld.

11. Defendants further failed to maintain an accurate record keeping of hours worked and wages paid to Plaintiff and other similarly situated employees.

12. Defendants have systematically and repeatedly ignored the requirements of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., ("FLSA") and the New York Labor Law § 190 *et seq*., ("NYLL"). Plaintiff, on behalf of himself and similarly situated employees, seeks relief for Defendants' unlawful actions, including compensation for unpaid minimum wages, overtime wages, spread-of-hours pay, liquidated damages, statutory civil damages, pre- and post-judgment interest, compensatory damages, and attorney's fees and costs, pursuant to the FLSA and NYLL.

13. Plaintiff further seeks to recover damages to redress the injuries he suffered as the result of being retaliated against by Defendants for complaining of Defendants' improper pay practices, in violation of NYLL § 215.

## JURISDICTION AND VENUE

14. This Court has original federal question jurisdiction under 28 U.S.C. §§ 1331 and 1337 and 29 U.S.C. § 216(b) for causes of action brought under the FLSA (29 U.S.C. § 201 *et seq.*,).

15. This Court has supplemental jurisdiction over the claims brought under New York State law pursuant to 28 U.S.C. § 1367, as the claims are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

16. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391, because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district.

17. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

**Plaintiff Arroyo**

18. From the commencement of his employment with Defendants until on or about December 11, 2016, Arroyo resided in Bronx County, New York.

19. From on or about December 11, 2016 through the present, Arroyo resided and continues to reside in New York County, New York.

20. From in or around February 2009 until in or around February 2, 2021, Arroyo was an employee of J & M under all applicable statutes.

21. From in or around February 2009 until in or around February 2, 2021, Arroyo was an employee of 68 Perry under all applicable statutes.

22. From in or around November 2014 until in or around November 2020, Arroyo was an employee of Bra under all applicable statutes.

23. From in or around February 2016 until in or around February 2, 2021, Arroyo was an employee of 219 E. 27th under all applicable statutes.

24. At all times during his employment with Defendants, Arroyo was an employee engaged in commerce or the production of goods for commerce on behalf of Defendants.

25. During his employment with Defendants, Arroyo was at all times subordinate to and under the direct supervision of Jerry, David, and Jessica.

**Defendant J & M**

26. J & M was and is a domestic business corporation duly organized and existing under the laws of the State of New York.

27. At all times relevant to this action, J & M was and is a for-profit entity authorized to conduct business pursuant to the laws of the State of New York.

28. J & M's principal offices are located at 343 St. Nicholas Avenue, Suite 1, New York, New York 10027 ("J & M Headquarters").

29. At all times relevant to this action, J & M was and is a business or enterprise engaged in interstate commerce.

30. At all times relevant to this action, J & M has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in produced for commerce by any person.

31. At all times relevant to this action, J & M operates and controls an enterprise engaged in commerce with an annual gross volume of business done exceeding $500,000.

32. At all times relevant to this action, in addition to providing property management services for the other Corporate Defendants, J & M provided property management services for the property located at 178 Spring Street, New York, New York 10012.

33. From in or around February 2009 until on or around February 2, 2021, J & M was an employer of Plaintiff within the meaning of all applicable statutes.

34. At all times relevant to this action, J & M employed eleven (11) or more individuals and is a large employer as defined by the New York Labor Law.

**Defendant 219 E. 27th**

35. 219 E. 27th was and is a domestic business corporation duly organized and existing under the laws of the State of New York.

36. At all times relevant to this action, 219 E. 27th was and is a for-profit entity authorized to conduct business pursuant to the laws of the State of New York.

37. 219 E. 27th's principal offices are located at 221 East 27th Street, New York, New York 10016.

38. At all times relevant to this action, 219 E. 27th was and is a business or enterprise engaged in interstate commerce.

39. At all times relevant to this action, 219 E. 27th has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in produced for commerce by any person.

40. At all times relevant to this action, 219 E. 27th operates and controls an enterprise engaged in commerce with an annual gross volume of business done exceeding $500,000.

41. At all times relevant to this action, 219 E. 27th owns, operates, and/or controls the property located at 217 E. 27th Street, New York, New York 10016.

42. At all times relevant to this action, 219 E. 27th owns, operates, and/or controls the property located at 219 E. 27th Street, New York, New York 10016.

43. From in or around February 2106 until on or around February 2, 2021, 219 E. 27th was an employer of Plaintiff within the meaning of all applicable statutes.

**Defendant 68 Perry**

44. 68 Perry was and is a domestic limited liability company duly organized and existing under the laws of the State of New York.

45. At all times relevant to this action, 68 Perry was and is a for-profit entity authorized to conduct business pursuant to the laws of the State of New York.

46. 68 Perry's principal offices are located at J & M Headquarters.

47. At all times relevant to this action, 68 Perry was and is a business or enterprise engaged in interstate commerce.

48. At all times relevant to this action, 68 Perry has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in produced for commerce by any person.

49. At all times relevant to this action, 68 Perry operates and controls an enterprise engaged in commerce with an annual gross volume of business done exceeding $500,000.

50. At all times relevant to this action, 68 Perry owns, operates, and/or controls the property located at 68 Perry Street, New York, New York 10014.

51. From in or around February 2009 until on or around February 2, 2021, 68 Perry was an employer of Plaintiff within the meaning of all applicable statutes.

**Defendant Bra**

52. Bra was and is a domestic business corporation duly organized and existing under the laws of the State of New York.

53. At all times relevant to this action, Bra was and is a for-profit entity authorized to conduct business pursuant to the laws of the State of New York.

54. Bra's principal offices are located at 20 West 46th Street, Suite 600, New York, New York 10036.

55. Bra also maintains offices located at J & M Headquarters.

56. At all times relevant to this action, Bra was and is a business or enterprise engaged in interstate commerce.

57. At all times relevant to this action, Bra has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in produced for commerce by any person.

58. At all times relevant to this action, Bra operates and controls an enterprise engaged in commerce with an annual gross volume of business done exceeding $500,000.

59. At all times relevant to this action, Bra owns, operates, and/or controls the property located at 420 West 49th Street, New York, New York 10019.

60. From in or around November 2014 until on or around February 2, 2021, Bra was an employer of Plaintiff within the meaning of all applicable statutes.

**Defendant Jerry**

61. Jerry, upon information and belief, was and is a resident of the State of New York.

62. At all times relevant to this action, Jerry served as a principal, officer, owner, and/or manager of J & M.

63. At all times relevant to this action, Jerry served as a principal, officer, owner, and/or manager of 219 E. 27th.

64. At all times relevant to this action, Jerry served as a principal, officer, owner, and/or manager of 68 Perry.

65. At all times relevant to this action, Jerry served as a principal, officer, owner, and/or manager of Bra.

66. Jerry possesses or possessed operational control and policy making authority, an ownership interest, or significant control of the Corporate Defendants.

67. Jerry exercised the power and authority to hire and fire employees, establish the rate and

method of pay of employees, determine work schedules, control labor relations and personnel policies, maintain employment records, and determine terms and conditions of employment of Plaintiff, the FLSA Collective and the Rule 23 Class.

68. Employees of the Corporate Defendants could complain to Jerry directly regarding any of the terms of their employment, and Jerry would have the authority to effect any changes to the quality and terms of their employment.

69. The acts of the Corporate Defendants charged in this Complaint were authorized, directed or accomplished by Jerry individually, by himself or his agents, officers, employees or representatives, while actively engaged in the management of the Corporate Defendants.

70. Jerry is personally and jointly and severally liable for the violations of the FLSA and NYLL by the Corporate Defendants.

**Defendant David**

71. David, upon information and belief, was and is a resident of the State of New York.

72. At all times relevant to this action, David served as a principal, officer, owner, and/or manager of J & M.

73. At all times relevant to this action, David served as a principal, officer, owner, and/or manager of 219 E. 27th.

74. At all times relevant to this action, David served as a principal, officer, owner, and/or manager of 68 Perry.

75. At all times relevant to this action, David served as a principal, officer, owner, and/or manager of Bra.

76. David possesses or possessed operational control and policy making authority, an ownership interest, or significant control of the Corporate Defendants.

77. David exercised the power and authority to hire and fire employees, establish the rate and

method of pay of employees, determine work schedules, control labor relations and personnel policies, maintain employment records, and determine terms and conditions of employment of Plaintiff, the FLSA Collective and the Rule 23 Class.

78. Employees of the Corporate Defendants could complain to David directly regarding any of the terms of their employment, and David would have the authority to effect any changes to the quality and terms of their employment.

79. The acts of the Corporate Defendants charged in this Complaint were authorized, directed or accomplished by David individually, by himself or his agents, officers, employees or representatives, while actively engaged in the management of the Corporate Defendants.

80. David is personally and jointly and severally liable for the violations of the FLSA and NYLL by the Corporate Defendants.

**Defendant Jessica**

81. Jessica, upon information and belief, was and is a resident of the State of New York.

82. At all times relevant to this action, Jessica served as a principal, officer, owner, and/or manager of J & M.

83. At all times relevant to this action, Jessica served as a principal, officer, owner, and/or manager of 219 E. 27th.

84. At all times relevant to this action, Jessica served as a principal, officer, owner, and/or manager of 68 Perry.

85. At all times relevant to this action, Jessica served as a principal, officer, owner, and/or manager of Bra.

86. Jessica possesses or possessed operational control and policy making authority, an ownership interest, or significant control of the Corporate Defendants.

87. Jessica exercised the power and authority to hire and fire employees, establish the rate and

method of pay of employees, determine work schedules, control labor relations and personnel policies, maintain employment records, and determine terms and conditions of employment of Plaintiff, the FLSA Collective and the Rule 23 Class.

88. Employees of the Corporate Defendants could complain to Jessica directly regarding any of the terms of their employment, and Jessica would have the authority to effect any changes to the quality and terms of their employment.

89. The acts of the Corporate Defendants charged in this Complaint were authorized, directed or accomplished by Jessica individually, by himself or his agents, officers, employees or representatives, while actively engaged in the management of the Corporate Defendants.

90. Jessica is personally and jointly and severally liable for the violations of the FLSA and NYLL by the Corporate Defendants.

**Joint Employer Relationship**

91. At all times relevant to this action, Defendants were joint employers of Plaintiff and similarly situated employees.

92. At all times relevant to this action, and as a matter of economic reality, Defendants were employers and/or joint employers of Plaintiff and similarly situated employees within the meaning of the FLSA and NYLL.

93. Facts that demonstrate that Defendants were Plaintiff's employers include:

   a. Defendants all suffered or permitted Plaintiff and similarly situated employees to work.

   b. Each of the Defendants acted directly or indirectly in the interest of one another in relation to Plaintiff and similarly situated employees.

   c. Defendants all simultaneously benefitted from Plaintiff's work.

   d. Defendants each had either functional and/or formal control over the terms and

conditions of work of Plaintiff and similarly situated employees.

e. Plaintiff and similarly situated employees performed work integral to each Defendant's operation.

f. Each Defendant had substantial control over Plaintiff's working conditions and over the unlawful policies and practices alleged herein.

94. Defendants' operations were interrelated and unified.

95. Defendants shared a common management and was centrally controlled and/or owned by Defendants.

96. From in or around the commencement of Plaintiff's employment with J & M in or around February 2009 until Plaintiff's constructive termination from J & M on February 2, 2021, Plaintiff performed janitorial/super services for the property located at 68 Perry Street, New York, New York 10014.

97. At all times relevant to this action, J & M was and is the registered managing agent for the property located at 68 Perry Street, New York, New York 10014.

98. At all times relevant to this action, the property located at 68 Perry Street, New York, New York 10014 was and is owned, operated, and/or controlled by Defendant 68 Perry.

99. The Building Registration Summary Report, as shown on the New York City Department of Housing Preservation and Development website, for the property located at 68 Perry Street, New York, New York 10014, lists Defendant 68 Perry as the owner of the property, Jerry as the "Head Officer", and J & M Headquarters as the address for Defendant 68 Perry.[1]

100. Plaintiff received a paycheck and W-2 from Defendant 68 Perry for work performed in his capacity as a janitor/super with J & M.

---

[1] https://hpdonline.hpdnyc.org/HPDonline/select_application.aspx, search results retrieved April 17, 2021.

101.     Plaintiff's paychecks and W-2s from Defendant 68 Perry were regularly controlled by J & M principles at J & M Headquarters prior to J & M releasing or mailing Defendant 68 Perry's pay documents to Plaintiff.

102.     At all times relevant to this action, as a regular condition of Plaintiff's employment with Defendant 68 Perry and J & M, Jerry and David—in their capacity as J & M principles—directed Plaintiff to perform his janitorial/super duties and responsibilities at the property located at 68 Perry Street, New York, New York 10014 in furtherance of the operation and for the economic benefit of both Defendant 68 Perry and J & M.

103.     From in or around November 2014 until in or around November 2020, Plaintiff performed janitorial/super services for the property located at 420 West 49th Street, New York, New York 10019.

104.     At all times relevant to this action, J & M was and is the registered managing agent for the property located at 420 West 49th Street, New York, New York 10019.

105.     At all times relevant to this action, the property located at 420 West 49th Street, New York, New York 10019 was and is owned, operated, and/or controlled by Defendant Bra.

106.     The Building Registration Summary Report, as shown on the New York City Department of Housing Preservation and Development website, for the property located at 420 West 49th Street, New York, New York 10019, lists Defendant Bra as the owner of the property, Jerry as the "Head Officer", and J & M Headquarters as the address for Defendant Bra.[2]

107.     Plaintiff received a paycheck and W-2 from Defendant Bra for work performed in his capacity as a janitor/super with J & M.

---

[2] https://hpdonline.hpdnyc.org/HPDonline/select_application.aspx, search results retrieved April 17, 2021.

108.     Plaintiff's paychecks and W-2s from Defendant Bra were regularly controlled by J & M principles at J & M Headquarters prior to J & M releasing or mailing Defendant Bra's pay documents to Plaintiff.

109.     At all times relevant to this action, as a regular condition of Plaintiff's employment with Defendant Bra and J & M, Jerry and David—in their capacity as J & M principles—directed Plaintiff to perform his janitorial/super duties and responsibilities at the property located at 420 West 49th Street, New York, New York 10019, in furtherance of the operation and for the economic benefit of both Defendant Bra and J & M.

110.     From in or around 2015 until Plaintiff's constructive termination from J & M on February 2, 2021, Plaintiff performed janitorial/super services for the property located at 178 Spring Street, New York, New York 10012.

111.     Plaintiff received a paycheck and W-2 from Defendant J & M for work performed in his capacity as a janitor/super for the property located at 178 Spring Street, New York, New York 10012.

112.     Plaintiff's paychecks and W-2s for the work Plaintiff performed at 178 Spring Street, New York, New York 10012 were regularly controlled by J & M principles at J & M Headquarters prior to J & M releasing or mailing pay documents to Plaintiff.

113.     At all times relevant to this action, as a regular condition of Plaintiff's employment with J & M, Jerry and David—in their capacity as J & M principles—directed Plaintiff to perform his janitorial/super duties and responsibilities at the property located at 178 Spring Street, New York, New York 10012 in furtherance of the operation and for the economic benefit of Defendant J & M.

114.     From in or around February 2016 until Plaintiff's constructive termination from J & M on or around February 2, 2021, Plaintiff performed janitorial/super services for the property

located at 219 East 27th Street, New York, New York 10016.

115.     From the commencement of his employment with Defendant J & M and Defendant 68 Perry in or around February 2009 until on or about December 11, 2016, Plaintiff resided in a building that was not managed, owned, operated, and/or controlled by any of Defendants.

116.     In performing work for Defendants prior to December 11, 2016, Plaintiff commuted from his then-residence in the Bronx to the buildings managed, owned, operated, and/or controlled by Defendants to which he was assigned by J & M.

117.     Beginning on or about December 11, 2016 and continuing to the present, Plaintiff resided and continues to reside at 217 East 27th Street, New York, New York 10016 ("Plaintiff's Residence").

118.     At all times relevant to this action, J & M was and is the registered managing agent for Plaintiff's Residence.

119.     All times relevant to this action, J & M was and is the registered managing agent for the property located at 219 East 27th Street, New York, New York 10016—the property adjacent to Plaintiff's Residence.

120.     At all times relevant to this action, Plaintiff's Residence and the property located at 219 East 27th Street, New York, New York 10016 were and are owned, operated, and/or controlled by Defendant 219 E. 27th.

121.     The Building Registration Summary Report, as shown on the New York City Department of Housing Preservation and Development website, for Plaintiff's Residence and the property located at 219 East 27th Street, New York, New York 10016, lists Defendant 219 E. 27th as the owners of the two properties and J & M Headquarters as the address for

Defendant 219 E. 27th.[3]

122.     Plaintiff received a paycheck and W-2 from Defendant 219 E. 27th for work performed in his capacity as a janitor/super with J & M.

123.     Plaintiff's paychecks and W-2s from Defendant 219 E. 27th were regularly controlled by J & M principles at J & M Headquarters prior to J & M releasing or mailing Defendant 219 E. 27th's pay documents to Plaintiff.

124.     At all times relevant to this action, as a regular condition of Plaintiff's employment with Defendant 219 E. 27th and J & M, Jerry and David—in their capacity as J & M principles—directed Plaintiff to perform his janitorial/super duties and responsibilities at the property located at 219 East 27th Street, New York, New York 10016 in furtherance of the operation and for the economic benefit of both Defendant 219 E. 27th and J & M.

125.     Throughout Plaintiff's employment with Defendants, Plaintiff reported to J & M Headquarters to pick up keys, flyers, and other materials to be used in the course of carrying out his janitorial duties and responsibilities at all of the four managed properties.

126.     Upon information and belief, at all times relevant to this action, Defendants J & M, 219 E. 27th, 68 Perry, and Bra share corporate owners, officers, and/or directors.

127.     On a daily basis, Jerry and David managed the operations of Defendant J & M and directed employees of J & M to perform work at and for the other Corporate Defendants.

128.     Jessica consulted and advised Jerry and David in the course of their management of the operations of J & M and herself managed J & M's operations when Jerry or David were not available.  Additionally, Jessica was responsible for managing payroll for the J & M employees performing work at any of the properties owned, operated, and/or controlled by

---

[3] https://hpdonline.hpdnyc.org/HPDonline/select_application.aspx, search results retrieved April 17, 2021.

the Corporate Defendants, including J & M.

129.     Acting in concert with one another, in furtherance of their mutual and individual interests, Defendants jointly controlled the terms and conditions of Plaintiff's employment, including by paying Plaintiff a set flat salary from each entity regardless of the amount of work performed for each entity, sharing materials purchased and used by Plaintiff in connection with the operation of each Corporate Defendant without specific assignation or allocation of resources or expenses to any single Defendant, and individually possessing and exercising the authority to call on Plaintiff's services at any point during his employment with Defendants.

## FLSA COLLECTIVE ALLEGATIONS

130.     Plaintiff brings claims for relief as a collective action pursuant to the FLSA 29 U.S.C § 216(b), on behalf of himself and all non-exempt employees of Defendants, including supers, repair persons, cleaning staff, and employees providing other janitorial services employed by Defendants at any time three years prior to the filing of this action through the entry of judgment in this action (the "FLSA Collective").

131.     The FLSA Collective consists of approximately fifty (50) similarly situated current and former non-exempt employees of Defendants, who have been victims of Defendants' common policy and practices that have violated their rights under the FLSA, inter alia, by denying them minimum wage, overtime pay and other monies.

132.     As part of their regular business practices, Defendants have intentionally, willfully, repeatedly, and in bad faith harmed Plaintiff and the FLSA Collective by engaging in a pattern, practice, and/or policy of violating the FLSA. This policy and pattern or practice includes, inter alia, the following:

    a.   Failing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked;

and,

    b. Failing to pay Plaintiff and the FLSA Collective the proper overtime pay for all hours worked over forty per week.

133. Defendants have engaged in this unlawful conduct pursuant to a policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

134. Defendants' unlawful conduct has been intentional, willful, in bad faith and has caused damage to Plaintiff and the FLSA Collective.

    a. Defendant J & M has previously been named as a Defendant in a lawsuit filed in this district for failing to abide by wage and hour provisions of the FLSA and NYLL by the action captioned *Suarez v. Piermont Court, LLC and J&M Realty Services Corp.*, Civil Action No. 1:16-cv-05406.

    b. The *Suarez* action alleged, *inter alia*, that J & M failed to pay the plaintiff, a super, overtime pay for the hours he worked over 40 hours per week.

    c. Upon information and belief, the same individuals—the Individual Defendants— owned, managed, and operated J & M during the period of the *Suarez* Plaintiff's employment with J & M for which they did not pay him overtime and during Arroyo's employment with J & M.

    d. Despite J & M's participation in and resolution of the *Suarez* action, after the *Suarez* action resolved, J & M continued to violate wage and hour provisions of the FLSA and NYLL with respect to Arroyo's employment.

135. The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable by Defendants, and are locatable

through Defendants' records, which Defendants are required to maintain pursuant to the FLSA and NYLL. These similarly situated employees should be notified of and allowed to opt into this action pursuant to 29 U.S.C. § 216(b).

## **RULE 23 CLASS ALLEGATIONS – NEW YORK**

136.    Plaintiff brings claims for relief as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class consisting of himself and all non-exempt employees of Defendants, including supers, repair persons, cleaning staff, and employees providing other janitorial services employed by Defendants, at any time six years prior to the filing of this action through the entry of judgment in this action (the "Rule 23 Class").  The persons in the Rule 23 Class are so numerous that joinder of all members is impracticable. The exact number of the Rule 23 Class is unknown to Plaintiffs at this time, but there are believed to be 75 such persons.

137.    The identities of the Rule 23 Class members are known to the Defendants and are contained in the employment records that the Defendants are required to create and maintain pursuant to the FLSA and NYLL.

138.    Common questions of law and fact exist as to all members of the Rule 23 Class that predominate over any questions affecting solely individual members.  Among the questions of law and fact common to the Rule 23 Class are:

    a.    Whether Defendants failed to pay the Rule 23 Class minimum wage for each hour worked;

    b.    Whether Defendants failed to pay the Rule 23 Class overtime compensation at a rate of one and one half times their regular hourly rate/applicable minimum wage rate for all hours worked over 40 in a workweek in violation of the NYLL;

    c.    Whether Defendants failed to pay the Rule 23 Class spread-of-hours pay for each

workday that a shift or shifts exceeded 10 hours per day.

d. Whether Defendants failed to furnish the Rule 23 Class with an accurate statement of all wages, hours worked, rates paid, and gross wages as required by the NYLL and supporting regulations;

e. Whether Defendants failed to furnish the Rule 23 Class with wage notices as required by the NYLL and supporting regulations; and,

f. Whether Defendants failed to keep true and accurate pay records, records for all hours/shifts worked by the Rule 23 Class, and other records required by the NYLL.

139. The claims of Plaintiff are typical of the claims of the Rule 23 Class they seek to represent. Plaintiff and the Rule 23 Class work or have worked for Defendants within the six years prior to the filing of this action. They enjoy the same statutory rights under the NYLL to be paid the correct minimum wage, to be paid overtime wages for all hours worked in excess of 40 in a workweek, to be paid spread-of-hours pay for workdays that their shift or shifts exceeded 10 hours per day, to be given wage notices at the time of hire and annually and to be issued wage statements at the end of each pay period. Plaintiff and the Rule 23 Class have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

140. Plaintiff and Rule 23 Class have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns of conduct.

141. Plaintiff will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

142. Plaintiff has retained counsel competent and experienced in wage and hour litigation and class action litigation.

143. There are no conflicts between Plaintiffs and the Rule 23 Class members.

144.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common policies, practices and procedures. Although the relative damages suffered by the individual class members are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation. Individual plaintiffs lack the financial resources necessary to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages. In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

145.     This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## PLAINTIFF'S FACTUAL ALLEGATIONS

146.     In or around February 2009, Plaintiff commenced employment with J & M.

147.     In or around 2009, Jerry hired Plaintiff to perform janitorial, repair, and other manual labor tasks for the properties managed by J & M.

148.     When Plaintiff commenced employment with J & M, he was not living at a property managed by J & M or owned, operated, and/or controlled by Defendants.

149.     Over the course of his employment with J & M, at Jerry's direction, Plaintiff was assigned to perform work at four properties managed by J & M: 68 Perry Street, New York, New York 10014; 420 West 49th Street, New York, New York 10019; 178 Spring Street, New York, New York 10012; and 219 East 27th Street, New York, New York 10016.

150.     For the duration of Plaintiff's employment with Defendants, Plaintiff was paid a flat sum for each property to which J & M assigned him.

151.     Initially upon the commencement of his employment with J & M in or around February 2009, Plaintiff was assigned one property—the property located at 68 Perry Street, New York, New York 10014.

152.     Upon information and belief, for as long as J & M assigned Plaintiff to the property located at 68 Perry Street, New York, New York 10014, that property was owned, operated, and/or controlled by Defendant 68 Perry.

153.     J & M assigned Plaintiff to work at the property located at 68 Perry Street, New York, New York 10014 for the duration of his employment with J & M—from in or around February 2009 until on or around February 2, 2021.

154.     On the 1st and 15th of every month he was assigned to the property located at 68 Perry Street, New York, New York 10014, Defendant 68 Perry issued Plaintiff a paycheck for the set flat amount of $200 for work performed at 68 Perry Street, New York, New York 10014.

155.     For each year Plaintiff was assigned to the property located at 68 Perry Street, New York, New York 10014, Defendant 68 Perry issued Plaintiff a W-2.

156.     From the commencement of his employment with J & M and Defendant 68 Perry in or around February 2009 until Jerry assigned Plaintiff to a second property in or around November 2014, Plaintiff worked a regular shift of approximately 8 hours per day, five days per week and was called out to perform work for approximately five (5) additional hours per week, after Plaintiff's shift or on weekends.

157.     In or around November 2014, Jerry assigned Plaintiff to a second property managed by J & M—the property located at 420 West 49th Street, New York, New York 10019.

158.     From when J & M assigned Plaintiff to the second property in or around November 2014 until his constructive termination on or around February 2, 2021, Plaintiff regularly worked from approximately 7:15 a.m. to approximately 7:15 p.m., Monday through Friday.

159.     After assigning Plaintiff to the second property, J & M continued to regularly call Plaintiff out to perform work after his usual hours or during weekends, resulting in Plaintiff performing approximately five (5) additional hours per week of work.

160.     As a result, from in or around November 2014 until his constructive termination on or around February 2, 2021, Plaintiff worked approximately 65 hours per week for J & M and the owners/operators/controllers of the properties to which Plaintiff was assigned.

161.     Upon information and belief, for as long J & M assigned Plaintiff to the property located at 420 West 49th Street, New York, New York 10019, that property was owned, operated, and/or controlled by Defendant Bra.

162.     From in or around November 2014 until in or around November 2020, J & M assigned Plaintiff to work at the property located at 420 West 49th Street, New York, New York 10019.

163.     From in or around November 2014 until in or around November 2020, once per month, Defendant Bra issued Plaintiff a paycheck for the set flat amount of $300 for work performed at 420 West 49th Street, New York, New York 10019.

164.     For each year Plaintiff was assigned to the property located at 420 West 49th Street, New York, New York 10019, Defendant Bra issued Plaintiff a W-2.

165.     Beginning in or around 2015, Jerry assigned Plaintiff to work at a third property managed by J & M—the property located at 178 Spring Street, New York, New York 10012.

166.     From in or around 2015 until on or around February 2, 2021, J & M assigned Plaintiff to work at the property located at 178 Spring Street, New York, New York 10012.

167.     From in or around 2015 until in or around February 2020 and again from in or around January 2021 until on or around February 2, 2021, once per month, J & M issued Plaintiff a paycheck for the set flat amount of $300 for work performed at 178 Spring Street, New York, New York 10012.

168.     Between approximately February 2020 and the end of December 2020, J & M did not issue Plaintiff any pay for work performed at 178 Spring Street, New York, New York 10012.

169.     At or around the end of December 2020, J & M issued Plaintiff a paycheck, purportedly as back pay for the work performed at 178 Spring Street, New York, New York 10012 between July 2020 and the end of December 2020.

170.     For each year Plaintiff was assigned to the property located at 178 Spring Street, New York, New York 10012, J & M issued Plaintiff a W-2.

171.     Beginning in or around February 2016, Jerry assigned Plaintiff to work at a fourth property managed by J & M—the property located at 219 East 27th Street, New York, New York 10016.

172.     Upon information and belief, for as long as J & M assigned Plaintiff to the property located at 219 East 27th Street, New York, New York 10016, that property was owned, operated, and/or controlled by Defendant 219 E. 27th.

173.     From in or around February 2016 until on or around February 2, 2021, J & M assigned Plaintiff to work at the property located at 219 East 27th Street, New York, New York 10016.

174.     From in or around February 2016 until in or around April 2017, on the 15th and 30th of every month, Defendant 219 E. 27th issued Plaintiff a paycheck for the set flat amount of $300 for work performed at 219 East 27th Street, New York, New York 10016.

175.     On or around December 11, 2016, Plaintiff moved into Plaintiff's Residence, a property managed by J & M and owned, operated, and/or controlled by Defendant 219 E. 27th.

176.     From in or around April 2017 until on or around February 2, 2021, on the 15th and 30th of every month, Defendant 219 E. 27th issued Plaintiff a paycheck for the set flat amount of $650 for work performed at 219 East 27th Street, New York, New York 10016.

177.     For each year Plaintiff was assigned to the property located at 219 East 27th Street, New York, New York 10016, Defendant 219 E. 27th issued Plaintiff a W-2.

178.     At all times during his employment with J & M, Plaintiff did not report to any regular location but instead reported to whichever of the assigned properties required Plaintiff's attention.

179.     For the duration of his employment with J & M, Plaintiff was dispatched by Jerry or David to any of the assigned properties as needed.  At times, Plaintiff would himself respond directly to requests from tenants of any of the assigned properties—an arrangement which was endorsed by Jerry and David.

180.     At all times during his employment with J & M, Plaintiff was on-call 24/7 and could and did respond to any of the properties to which he was assigned by J & M.

181.     For the duration of his employment with Defendants, none of the Defendants maintained a punch clock, log book, or other contemporaneous recordation of Plaintiff's hours worked.

182.    For the duration of his employment with Defendants, Defendants regularly failed to deliver or make available Plaintiff's paychecks, resulting in Plaintiff routinely not receiving his pay until weeks or months after the close of the pay period.

183.    At all times relevant to this action, Jessica was responsible for Defendants' payroll, including issuing Plaintiff his paychecks from all Defendant entities.

184.    At all times relevant to this action, on a routine basis, Plaintiff's checks were not timely issued or made available to him.

185.    After David took a more active role in J & M's day-to-day operations in or around December 2016, Defendants delayed Plaintiff's check even further, forcing Plaintiff to wait at least three weeks, and often much longer, after the close of the pay period for Defendants to make Plaintiff's checks available for mailing or pickup at J & M Headquarters.

186.    When Plaintiff asked Jessica where his paychecks were, Jessica regularly gave Plaintiff a variety of transparently improbable excuses, including that Plaintiff's checks had been returned to the office as 'undeliverable' by USPS.  After Plaintiff ultimately picked up his overdue paychecks from J & M Headquarters, the envelopes containing Plaintiff's checks did not bear any indication the USPS attempted or was unable to deliver the checks. Further, as Plaintiff has resided in the same J & M-managed property since on or about December 11, 2016, Defendants should not have had any difficulty correctly addressing his checks.

187.    Defendants' sporadic delivery and untimely payments of Plaintiff's wages caused Plaintiff significant financial hardship, and Plaintiff complained to Defendants on several occasions about the delayed pay.

188.    Despite Plaintiff's complaints, Defendants continued to fail to timely pay Plaintiff.

189.     Defendants further failed to reimburse Plaintiff for expenses he incurred during the course of his employment with Defendants.

190.     By way of example, for the duration of his employment, Plaintiff was required to front the cost of supplies he needed to purchase to for repairs and other tasks in the course of his performing his duties and responsibilities for Defendants.

191.     The supplies Plaintiff needed to purchase were for the exclusive benefit of Defendants and included, but were not limited to: cleaning supplies, such as sponges, detergent, and paper towels, mops, brooms, valves and other replacement parts for boilers, stoves, refrigerators, and other appliances, and printer ink.

192.     For the duration of his employment with Defendants, Plaintiff spent approximately $50 per week on supplies.

193.     Despite promises from Jerry and David and Plaintiff's repeated prompting, Plaintiff was rarely reimbursed for his purchases of supplies.

194.     Throughout his employment with Defendants, Plaintiff was often directed to perform work at more than one of the four properties in any given workday.  In the course of his employment with Defendants, Jerry and David required Plaintiff to travel to and purchase supplies from a Home Depot, even though a suitable hardware store was much closer to Plaintiff's Residence (and thus, the Defendant 219 E. 27th properties).  As Plaintiff needed to carry his tools and/or supplies to and from the assigned properties and Home Depot, travel by foot or public transportation was impracticable.

195.     Defendants never provided Plaintiff with a company car or other mode of transportation.  Consequently, Plaintiff was required to take taxicabs and/or rideshare services to and from the assigned properties and Home Depot.

196. For the duration of his employment with Defendants, Plaintiff spent approximately $80 per week on taxicab and rideshares in the course of performing his duties and responsibilities and in furtherance of Defendants' business interests.

197. Despite promises from Jerry and David and Plaintiff's repeated prompting, Plaintiff was never reimbursed for his taxicab and rideshare expenses incurred during his employment with Defendants.

198. On several occasions during Plaintiff's employment with Defendants, Plaintiff was asked by Jerry to cover for other J & M janitors/supers when they took vacation.

199. When Plaintiff covered for the vacationing janitors/supers, he performed the regular janitorial/super duties for those employees, including taking out the trash, responding to tenant complaints, and making any necessary repairs.

200. Defendants did not pay Plaintiff for any of the work performed while he was covering for other J & M janitors/supers.

201. In or around 2015, Plaintiff had surgery to remove a benign tumor on his abdomen.

202. For approximately one month, while Plaintiff was recovering from this surgery, Defendants refused to provide coverage for Plaintiff, and Plaintiff was forced to pay associates out-of-pocket or ask his then-girlfriend to cover for him.

203. On or around September 1, 2020, Plaintiff learned that his son died.

204. Upon learning of Plaintiff's son's death, Jerry promised Plaintiff thirty (30) days off, without pay, to mourn.

205. Plaintiff returned from bereavement on or around October 1, 2020.

206. In or around November 2020, Plaintiff realized he had not been paid since his return from bereavement for the work he performed at 420 West 49th Street, New York, New York 10019.

207.     Plaintiff asked Jerry when he was going to receive his paychecks for 420 West 49th Street, New York, New York 10019.

208.     Jerry responded by retaliatorily reassigning the property located at 420 West 49th Street, New York, New York 10019 to another super/janitor employed by J & M, against Plaintiff's wishes.

209.     Despite no longer being assigned to 420 West 49th Street, New York, New York 10019, until his constructive termination in or around February 2, 2021, Plaintiff continued to work approximately 65 hours per week for Defendants.

210.     After J & M removed the 420 West 49th Street, New York, New York 10019 location from Plaintiff's portfolio, Plaintiff no longer received a monthly paycheck from Bra.

211.     Plaintiff complained to Defendants of their unlawful pay practices on numerous occasions throughout his employment with Defendants.

212.     By way of example, throughout his employment with Defendants, Plaintiff repeatedly complained to Jessica about Defendants' failure to timely deliver or make available to him his paychecks.

213.     Defendants repeatedly ignored Plaintiff's complaints and continued to fail to timely pay Plaintiff for the work he performed.

214.     By way of further example, throughout his employment with Defendants, Plaintiff repeatedly complained to Jerry and to David about Defendants paying him below the minimum wage.

215.     Plaintiff repeatedly requested a wage increase from Jerry and David, most recently in or around September or October 2019.

216.     In response to Plaintiff's requests to be paid at least the minimum wage, Jerry and David regularly brushed Plaintiff off. Jerry would respond to Plaintiff's requests for a pay increase by telling him he would "look into it".

217.     Despite Jerry's assurances he would consider giving Plaintiff a pay increase, Defendants continued to pay Plaintiff below the minimum wage through his constructive termination.

218.     In or around September or October 2020, Plaintiff, no longer able to tolerate Defendants' continued refusal to pay him the minimum wage, began looking for employment elsewhere.

219.     Because Plaintiff's sole income was from Defendants, he could not afford to leave Defendants' employ until he found another job.

220.     On or around February 2, 2021, Plaintiff was forced to accept his constructive termination from Defendants.

221.     Having complained to Defendants of their failure to pay him the minimum wage and of their failure to timely tender his pay, and Defendants having taken no action to remediate Plaintiff's complaints, no reasonable person in Plaintiff's situation could be expected to continue working for Defendants.

222.     Plaintiff was forced to accept his constructive termination from Defendants in retaliation for Defendants' refusal to remediate their unlawful pay practices after Plaintiff's repeated complaints.

223.     For the duration of his employment with Defendants, Defendants did not pay Plaintiff the applicable minimum wage for all hours worked under the FLSA and NYLL.

224.    For the duration of his employment with Defendants, Defendants did not pay Plaintiff the one-and-one-half (1 ½) overtime premium rate for each hour he worked beyond 40 hours in a week.

225.    For the duration of his employment with Defendants, Defendants did not pay Plaintiff an additional hour of pay at the minimum wage for each day his shift work exceeded 10 hours.

226.    For the duration of his employment with Defendants, Defendants failed to keep accurate records of wages earned or hours worked by Plaintiff.

227.    For the duration of Plaintiff's employment with Defendants, Defendants failed to furnish Plaintiff with an accurate and complete statement with every payment of wages listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

228.    For the duration of his employment with Defendants, Defendants did not provide Plaintiff with a wage notice setting forth his rate of pay, exempt status, overtime rate, method of compensation, regular payday, names of his employers (including fictitious names), addresses and phone numbers for his employers' main offices or principal locations, or any allowances taken.

229.    For the duration of his employment with Defendants, Defendants did not properly withhold all applicable taxes from Plaintiff's paycheck.

230.     Defendants' violations of the FLSA and NYLL as relating to Plaintiff's employment with Defendants have been willful.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Unpaid Minimum Wage
### (On Behalf of Plaintiff and the FLSA Collective)

231.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

232.     Defendants were required to pay Plaintiff and the FLSA Collective the applicable federal minimum wage rate.

233.     Defendants failed to pay Plaintiff and the FLSA Collective the minimum wages to which they are entitled under the FLSA.

234.     Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the FLSA Collective.

235.     Defendants' violations of the FLSA described above have been willful, and therefore, a three year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C. § 255(a).

236.     As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective are entitled to recover from Defendants their unpaid minimum wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### New York Labor Law – Unpaid Minimum Wage
### (On Behalf of Plaintiff and the Rule 23 Class)

237.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

238.     Defendants failed to pay Plaintiff and the Rule 23 Class the minimum wages to which they are entitled under the NYLL.

239. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff and the Rule 23 Class minimum hourly wages.

240. As a result of Defendants' willful violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to NYLL §§ 663(1), *et seq*.

**THIRD CAUSE OF ACTION**
**Fair Labor Standards Act – Unpaid Overtime**
**(On Behalf of Plaintiff and the FLSA Collective)**

241. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

242. Defendants are employers within the meaning of 29 U.S.C §§ 203(e) and 206(a), and employed Plaintiff.

243. Defendants were required to pay Plaintiff and the FLSA Collective one and one-half (1 ½) times the regular rate of pay/applicable minimum wage rate for all hours worked in excess of 40 hours in a workweek.

244. Defendants failed to pay Plaintiff and the FLSA Collective the overtime wages to which they were entitled under the FLSA.

245. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff and the FLSA Collective overtime wages.

246. Defendants' violations of the FLSA described above have been willful, and therefore, a three year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C. § 255(a).

247. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective are entitled to recover from Defendants their unpaid overtime wages, liquidated

damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b).

<u>FOURTH CAUSE OF ACTION</u>
**New York Labor Law – Unpaid Overtime**
**(On Behalf of Plaintiff and the Rule 23 Class)**

248.    Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

249.    Under the NYLL and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiff and other non-exempt employees one and one half (1 ½) times the regular rate of pay/applicable minimum wage rate for all hours they worked in excess of forty.

250.    Defendants failed to pay Plaintiff and the Rule 23 Class the overtime wages to which they were entitled under the NYLL.

251.    Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff and the Rule 23 Class overtime wages.

252.    As a result of Defendants willful violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover their unpaid overtime wages, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to NYLL §§ 663(1), *et seq*.

<u>FIFTH CAUSE OF ACTION</u>
**New York Labor Law – Unpaid Spread-of-Hours**
**(On Behalf of Plaintiff and the Rule 23 Class)**

253.    Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

254.    Defendants have willfully failed to pay Plaintiff and the Rule 23 Class additional compensation of one hour's pay at the minimum hourly wage rate in all instances where Plaintiff and the Rule 23 Class worked either a split shift or more than 10 hours per day, in

violation of the NYLL §§ 650, *et seq.* and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. Tit. 12 §§, 137-1.7 (2010), 146-1.6 (2012).

255.     As a result of Defendants willful violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover unpaid spread-of-hours compensation, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to the NYLL.

## SIXTH CAUSE OF ACTION
### New York Labor Law – Wage Theft Prevention Act
### (On Behalf of Plaintiff and the Rule 23 Class)

256.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

257.     Defendants violated NYLL § 195(1) by failing to furnish Plaintiff and the Rule 23 Class, at the time of hiring and on or before February 1st of each subsequent year of employment (when applicable), with a notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designed by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office of principal place of business, and a mailing address if different; the telephone number of the employer; and anything otherwise required by law.

258.     Due to Defendants' violations of NYLL§ 195(1), Plaintiff and the Rule 23 Class are each entitled to statutory penalties of $50.00 for each workday that Defendants failed to provide wage notices, up to a maximum of $5,000 each, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided by NYLL § 198(1-b)

259.     Defendants violated NYLL § 195(3) by failing to furnish Plaintiff and the Rule 23 Class with each payment of wages and accurate statement listing the dates of work covered

by that payment or wages; name of employee; name of employer; address and phone number of employer; rate of rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages, deductions, allowances, if any, claimed as part of the minimum wage; and net wages.

260.     Through their failure to provide Plaintiff and the Rule 23 Class with wage statements as required by the NYLL, Defendants have violated NYLL § 190, *et seq*. and the supporting New York State Department of Labor Regulations.

261.     Due to Defendants' violation of NYLL § 195(3), Plaintiff and the Rule 23 Class are each entitled to statutory penalties of $250.00 for each workweek that Defendants failed to provide them with accurate wage statements, or a total of $5,000 each, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided for by NYLL § 198(1-d).

**SEVENTH CAUSE OF ACTION**
**New York Labor Law – Recording Keeping Violations**
**(On Behalf of Plaintiff and the Rule 23 Class)**

262.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

263.     At all times relevant to this action, Defendants were and are required to establish, maintain and preserve for not less than six years, weekly payroll records that show for each employee, among other information, true and accurate payroll records and the number of hours worked daily and weekly, including the time of arrival and departure of each employee. NYLL § 195(4); 12 N.Y.C.R.R. § 142-2.6.

264.     Defendants violated the applicable NYLL and NYCRR provisions by not maintaining and preserving Plaintiff's time of the commencement of and cessation of work performed for Defendants.

### EIGHTH CAUSE OF ACTION
**Fair Labor Standards Act – Retaliation**
**(On Behalf of Plaintiff)**

265.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

266.     Plaintiff was an employee of Defendants within the meaning of the FLSA.

267.     Defendants were employers of Plaintiff within the meaning of the FLSA.

268.     29 U.S.C. § 215(a)(3) prohibits any person, "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

269.     While employed by Defendants, Plaintiff complained to Defendant about Defendants' unlawful employment practices, including Defendants' failure to pay Plaintiff the minimum wage and failure to timely tender his pay.

270.     Plaintiff's complaints constitute protected activity under the FLSA.

271.     As a result of Plaintiff's complaints, Defendants continued to refuse to pay Plaintiff the minimum wage and timely pay Plaintiff and ultimately forced Plaintiff to accept his constructive termination.

272.     A causal connection exists between Plaintiff's complaints of Defendants' unlawful failure to pay the minimum wage and unlawful failure to timely pay Plaintiff and Defendants' continued failure to pay Plaintiff the minimum wage and timely pay Plaintiff, as well as Plaintiff's forced acceptance of his constructive termination.

273. Defendants violated 29 U.S.C. § 215(a)(3) by continuing to fail to pay Plaintiff the minimum wage, to timely tender Plaintiff's pay, and Plaintiff's forced acceptance of his constructive termination, in retaliation for Plaintiff's complaints of Defendants' unlawful pay practices.

274. Plaintiff is entitled to recover from Defendants' lost wages and other compensatory damages, in addition to reasonable attorneys' fees, costs, declaratory and injunctive relief, as a result of Defendants' retaliatory conduct.

**NINTH CAUSE OF ACTION**
**New York Labor Law – Retaliation**
**(On Behalf of Plaintiff)**

275. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

276. Plaintiff was an employee of Defendants within the meaning of the NYLL.

277. Defendants are employers within the meaning of the NYLL.

278. NYLL § 215(1) states, in part, "No employer or his or her agent, or the officer of agent of any corporation, partnership, or limited liability company…shall discharge, threaten, penalize or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer…or his or her authorized representative…that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter…[or] (iii) because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter…or (v) because such employee has otherwise exercised rights protected under this chapter…"

279. While employed by the Defendants, Plaintiff complained to the Defendants about Defendants' unlawful practices, policies and procedures of not being paid proper wages and not timely tendering his wages.

280.     Plaintiff's complaints to Defendants constitute protected activity under NYLL § 215.

281.     A causal connection exists between Plaintiff's complaints of Defendants' improper pay practices and Defendants' decision to continue to unlawfully pay Plaintiff, forcing Plaintiff to accept his constructive termination.

282.     Defendants violated NYLL § 215 by retaliating against Plaintiff by continuing to fail to pay Plaintiff minimum wage and to timely pay Plaintiff, as well as forcing Plaintiff to accept his constructive termination, due to Plaintiff's complaints about Defendants' unlawful pay practices, policies and procedures.

283.     Plaintiff is entitled to recover from Defendants lost wages and other compensatory damages and statutory penalties, in addition to reasonable attorneys' fees, costs, declaratory and injunctive relief, as a result of Defendants' retaliatory conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the FLSA Collective and Rule 23 Class, respectfully requests that this Court grant the following relief:

A. Designating this action as a collective action on behalf of the FLSA Collective and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated non-exempt employees and appointing Plaintiff and his counsel to represent the FLSA Collective. Such notice shall inform them that this civil action has been filed, the nature of the action, and their right to join this lawsuit if they believe they were denied proper wages.

B. Certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Rule 23 Class and appointing Plaintiff and his counsel to represent the class;

C. An order tolling the statute of limitations;

D. A declaratory judgment that the practices complained of herein are unlawful under applicable state and federal law;

E. Declaring that Defendants have violated the minimum wage provisions of the FLSA, NYLL and supporting New York State Department of Labor Regulations;

F. Declaring that Defendants violated the overtime provisions of the FLSA, NYLL and supporting New York State Department of Labor Regulations;

G. Declaring that Defendants violated the spread-of-hours pay provisions of the NYLL and New York State Department of Labor Regulations;

H. Declaring that Defendants violated the notice provisions of the NYLL and Wage Theft Prevention Act;

I. Declaring that the Defendants continued to fail to pay Plaintiff the minimum wage, continued to fail to timely tender Plaintiff's pay, and forced Plaintiff to accept his constructive termination due to Plaintiff's complaints of Defendants' unlawful pay practices, policies and procedures and awarding Plaintiff a recovery for damages sustained;

J. Enjoining future violations of the FLSA and NYLL by Defendants;

K. Declaring that Defendants' violations of the FLSA and NYLL were willful;

M. Awarding Plaintiff, the FLSA Collective, and Rule 23 Class unpaid minimum wages;

N. Awarding Plaintiff, the FLSA Collective, and Rule 23 Class unpaid overtime wages;

O. Awarding Plaintiff and the Rule 23 Class unpaid spread-of hours compensation;

P. Awarding Plaintiff and the Rule 23 Class statutory penalties for Defendants' failure to furnish wage notices and/or complete and accurate wage statements pursuant to the NYLL.

Q. Awarding Plaintiff, the FLSA Collective, and Rule 23 Class liquidated and/or punitive damages in amount equal to the total amount of wages found to be due, pursuant to the FLSA and NYLL;

R. Awarding damages to the Plaintiff, retroactive to the date of his constructive termination, for all lost wages and benefits resulting from the Defendants' unlawful employment practices in an amount that exceeds the jurisdictional limit of all lower courts;

S. Awarding Plaintiff, the FLSA Collective, and Rule 23 Class, reasonable attorney's fees, costs and expenses of the action under the FLSA and NYLL; and,

T. Awarding Plaintiff, the FLSA Collective, and Rule 23 Class pre-judgment and post-judgement interest under the FLSA and NYLL; and

U. Awarding such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury.


Dated:  April 22, 2021
    New York, New York

**AKIN LAW GROUP PLLC**

*/s/ Justin Ames*

_____
Justin Ames, Esq.
45 Broadway, Suite 1420
New York, NY 10006
Telephone: (212) 825-1400
*Attorneys for Plaintiff*