UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LARRY ARROYO, *individually and on behalf of all others similarly situated*,

                              Plaintiff,

-v-

J & M REALTY SERVICES CORP. et al.,

                              Defendants.

21 Civ. 3611 (PAE) (JLC)

ORDER

---

PAUL A. ENGELMAYER, District Judge:

On December 28, 2021, the parties submitted a proposed settlement agreement and a letter in support in this Fair Labor Standards Act ("FLSA") and New York Labor Law Action. *See* Dkt. 46 ("First Mem."), Dkt. 46-1 ("First Agreement"). On January 13, 2022, the Court declined to approve the proposed agreement given plaintiff's counsel's incomplete accounting of attorneys' fees and an overbroad general release provision. Dkt. 47. On February 1, 2022, the parties submitted a revised settlement agreement and billing records. Dkt. 50 ("Mem."), Dkt. 50-1 ("Agreement"), Dkt. 50-2 ("Billing Records").

Parties cannot privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015). Rather, the parties must satisfy the Court that their agreement is "fair and reasonable." *Velasquez v. SAFI-G, Inc.*, No. 15 Civ. 3068 (WHP), 2015 WL 5915843, at *1 (S.D.N.Y. Oct. 7, 2015). Further, "[t]he Court must . . . separately assess the reasonableness of plaintiffs' attorney's fees, even when the fee is negotiated as part of a settlement rather than judicially determined." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013).

The Court has carefully reviewed the Agreement. Because the requested fees are reasonable and the Agreement no longer contains a general release of claims, the Court approves the Agreement.

## I.   Attorneys' Fees

Under the Agreement, defendants are to pay $99,000 within 45 days of the Court's approval of the settlement agreement. Agreement ¶ 4. Plaintiff Larry Arroyo is to receive a total of $58,434 and plaintiff's counsel is to receive $40,566. *Id.* That represents a total of fees of $39,600, plus $966 in costs. *See* First Mem. at 4. The Agreement therefore allocates approximately 40% of the settlement amount to plaintiff's counsel.

"Except in extraordinary cases, courts in this District have declined to award fees representing more than one-third of the total settlement amount." *Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13 Civ. 6667 (PAE), 2015 WL 5122530, at *4 (S.D.N.Y. Aug. 31, 2015). For example, in *Lopez v. Poko-St. Ann L.P.*, the court found that the record did not sufficiently justify a fee constituting approximately 40% of the aggregate settlement. 176 F. Supp. 3d 340, 342–43 (S.D.N.Y. 2016). Plaintiffs' counsel had provided scant information "concerning either the fee arrangement or the[ir] actual time and efforts," or "any breakdown between costs and fees." *Id.* at 343. The court accordingly directed the parties to reduce fees to one-third of the total settlement, plus costs, or "set forth the facts that justify an above-market fee award and submit counsel's actual time and expense records." *Id.* at 346.

Here, plaintiff's counsel has set forth specific and credible reasons for the fee proposed, which, for the most part, the Court adopts. Specifically, the parties reasonably posit that "this matter was substantially more complex than the standard FLSA action." First Mem. at 5. They cite both legal and factual complexities. The legal issues they identify include each defendant's

2

"respective liability under the joint employer theory, the potential application of the Building Service Minimum Wage Order and resulting exemptions," statutes of limitations and their tolling periods in response to the pandemic, and "the applicability and potential recovery for violations of the FLSA's and NYLL's respective 'prompt payment' obligations." The factual issues include Arroyo's work and pay received from "four separate entities, in varying amounts, across different, overlapping periods of time." *Id.* In addition, the seven defendants had four separate counsel, "individual defenses, potential cross-claims, disputes of fact, and other interests." *Id.* at 6–7. These factors made it challenging to reach a global settlement accounting for defendants' distinct and sometimes divergent interests. *Id.* at 7. The parties also note that the Second Circuit has rejected a strict proportionality of attorneys' fees as part of FLSA settlements. *Id.* at 6 (citing *Fisher v. SD Prot. Inc.*, 948 F.3d 593 (2d Cir. 2020)).

To be sure, the Court does not agree with one argument cited by plaintiffs: that counsel's fee is lower than the ostensible lodestar of $41,117.50, not including costs. *Id.* at 5. That is because, once an appropriate downward adjustment of counsels' hourly rates has been made, counsel's request in fact appears to represent a multiplier of 1.3 on their lodestar. But because such a multiplier is reasonable, the Court awards such fees.

Specifically, as to the tabulation of the lodestar, contemporaneous billing records reflect that Justin Ames spent a total of 107.3 hours at a rate of $350 per hour; that Robert Salaman spent a total of 3 hours, at $400 per hour; and that Olena Tatura spent 10.5 hours, at $225 per hour, on the case.

Ames, the lead attorney on the case, is a senior associate at the Akin Law Group. He graduated from law school in 2012, and practiced criminal and matrimonial law until 2019, when he joined the firm and began working "almost exclusively [on] plaintiff's wage-and-hour and

3

employment discrimination matters." First Mem. at 4. He bills his work at $350 per hour. *Id.*; *see* Billing Records. Other courts in this district "routinely approve of an hourly rate for associates between $200 and $300" an hour. *Salazar v. 203 Lena Inc.*, No. 16 Civ. 7743 (VB) (JLC), 2020 WL 5627118, at *12 (S.D.N.Y. Sept. 18, 2020), *report and recommendation adopted*, No. 16 Civ. 7743 (VB), 2020 WL 6257158 (S.D.N.Y. Oct. 23, 2020) (quoting *Velandia v. Serendipity 3, Inc.*, No. 16 Civ. 1799 (AJN), 2018 WL 3418776, at *4 (S.D.N.Y. July 12, 2018)). A rate in that range is particularly apt for an attorney like Ames, who practiced in other areas of law for seven of his nine years since graduating from law school. *See Sanchez v. DPC New York Inc.*, 381 F. Supp. 3d 245, 252 (S.D.N.Y. 2019) ("Hershan primarily practiced in the area of criminal defense . . . Thus, the Court finds that Hershan's hourly rate should be . . . $200."); *Gamero v. Koodo Sushi Corp.*, 328 F. Supp. 3d 165, 174 (S.D.N.Y. 2018) ("Ms. Gutierrez is entitled only to a lower rate of $250. [She] had minimal experience in wage and hour law at the time she began working on this case," as she joined the firm after three years working in criminal law). The Court finds Ames' work is to be reimbursed at an hourly rate of $250.

Salaman joined the firm as an associate in 2013, the same year he was admitted to the bar. He became a partner at the firm in 2020. His work is billed at $400 an hour. *See* Billing Records. The Court reduces his fee to $300 an hour to reflect his relatively limited experience and in line with the awards by other courts for his work in FLSA cases. *See Grullon v. Justin Pharmacy Inc.*, No. 20 Civ. 6122 (OTW), 2021 WL 76386, at *3 n.4 (S.D.N.Y. Jan. 8, 2021) ("The Court finds the $300 per hour rate charged by . . . Mr. Salaman appropriate"); *Zokirzoda v. Acri Cafe Inc.*, No. 18 Civ. 11630 (JPO), 2020 WL 359908, at *7 (S.D.N.Y. Jan. 22, 2020)

(describing a $300 rate for Salaman as "unreasonably high" and citing awards of $250 per hour and $200 per hour to Salaman).

Tatura, an associate admitted to the bar in 2020 who previously worked as a paralegal, seeks a rate of $225 per hour. The Court reduces her rate to $200 per hour to reflect her limited experience as a practicing lawyer. *See Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 29 (S.D.N.Y. 2015) (awarding second-year associate $175 per hour); *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 508 (S.D.N.Y. 2012) (awarding lawyer admitted for less than two years $175 per hour).

With those adjustments, the total lodestar fee amounts to $29,825, not $41,117.50. Accordingly, counsel is requesting a multiplier of about 1.3 on its lodestar for its $39,600 fee request. "In determining whether and to what extent to award a multiplier, courts consider the same factors as those relevant to determining the reasonableness of a fee generally: the time and labor expended by counsel; the magnitude and complexities of the litigation; the risk of the litigation; and so forth." *Hernandez v. Boucherie LLC*, No. 18 Civ. 7887 (VEC), 2019 WL 3765750, at *7 (S.D.N.Y. Aug. 8, 2019). Here, that multiplier is reasonable given the factual and legal complexity of the case and risks of litigation. It is also in line with others awarded in this District, including in FLSA cases of less complexity. *See Velandia*, 2018 WL 3418776, at *5 (1.2 lodestar multiplier reasonable); *Castillo v. Cranes Express Inc.*, No. 18 Civ. 1271 (PKC) (LB), 2018 WL 7681356, at *5 (E.D.N.Y. Dec. 12, 2018) (1.26 lodestar multiplier reasonable); *Hernandez*, 2019 WL 3765750, at *7 (1.3 lodestar multiplier reasonable, which is "lower . . . than would be appropriate in . . . a more complicated FLSA case"); *Souffrant v. 14-15 Mertens Place Corp.*, No. 19 Civ. 5482 (BCM), 2020 WL 1166231, at *2 (S.D.N.Y. Mar. 11, 2020) (1.6 multiplier reasonable). Accordingly, the Court finds the fee request reasonable here.

5

## II. Release of Claims

The Court previously declined to approve the Agreement for the independent reason that it could not approve its unacceptably sweeping release provision. It originally provided that Arroyo, "on behalf of himself, his descendants, dependents, heirs, executors, administrators, assigns, and successors, fully, finally and forever releases and discharges Defendants, its past and present parents, subsidiaries and affiliates, and their respective past and present predecessors, successors, assigns, representatives, stockholders, officers, directors, agents, employees, attorneys and insurers from any and all wage claims and rights that the Plaintiff may have, whether now known or unknown, suspected or unsuspected, including, but not limited to, arising out of or in any way connected with the Plaintiff's employment with Defendants as of the date this Agreement is executed." First Agreement at 2. Because that provision "waive[d] practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," and Arroyo unilaterally released defendants from claims but not vice versa, the Court rejected it. *See Lazaro-Garcia v. Sengupta Food Servs.*, No. 15 Civ. 4259 (RA), 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)); *Lopez*, 176 F. Supp. 3d at 344.

The parties have since revised this provision to limit its sweep to "any and all wage-and-hour claims and rights that were asserted in the Litigation or that could have been asserted from the facts plead in the Complaint initiating the Litigation." Agreement ¶ 6. Further, defendants also release Arroyo "from any and all claims and rights arising out of or in any way connected with [Arroyo's] employment with Defendants or the separation of [Arroyo's] employment with

6

Defendants[.]" *Id.* Such revisions properly tailor the release provision and make it, in the Court's judgment, reasonable.

In sum, upon careful review, the Court is satisfied that the Agreement was achieved through procedurally fair means and is fair and reasonable such that it satisfies the standard set forth in *Cheeks v. Freeport Pancake House.* Accordingly, the Court approves the Agreement. The Clerk of the Court is respectfully directed to close all motions pending and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: February 28, 2022
       New York, New York